The third case on the docket is 2-18-0728. The country's preferred insurance company and contribution insurance company plaintiff's appellees, the John S. Miroballi et al, defendants' appellants. Arguing on behalf of the defendants' appellants, Mr. Robert P. Walsh. Arguing on behalf of the plaintiffs' appellees, Mr. Cornelius E. McKnight. Both sides ready to proceed? Yes. You may proceed when you're ready, then. Thank you. Good morning, Your Honors. Good morning. Quite simply, this is a case involving automobile insurance coverage. The decedent, John Miroballi, and his wife, Jeannie, were driving down to Florida on December 3, 2010 in a Chevrolet. The vehicle, unfortunately, was involved in a fatal accident, and a claim was made against the policy of insurance that both John and Jeannie were covered under with country companies. Country companies denied the claim, asserting an exclusion under what's called the non-owned auto provision. And if I may, the policy extended auto insurance to Mr. Miroballi as the driver, and he was driving the vehicle that he told country companies that he owned and insured, and that was a Buick. And it extended to coverage to any vehicle that was non-owned by Mr. Miroballi, as long as it was not available for his regular use. Now, regular use does not have a finite definition, as is repeatedly mentioned in the case law, starting with the Supreme Court case of Differding. They say that it's an independent examination on a factual and circumstantial basis per case by case. And the circumstances and facts of this case are very unique. Counsel argues a lot about limits and whether limitations being placed on the use is the cynical non of this whole issue. Do you agree with that? Well, I agree that in some of the case law, there's discussion that if a young man is a delivery driver or somebody that I think there's a case involving people's gas way back when, Defferson's using an employer vehicle, and for whatever reason, they then go on what I'll call a frolic. I think one case they visited a friend. One guy went to a golf outing. And the courts in those cases said that those trips went out of the restriction that was placed on the use of the vehicle, and therefore, this was not something that was regular, habitual, or frequent. This was a unique situation where that individual took the car to the golf outing or the friend's house. And, yes, Your Honor, in this case, we have that exact situation where Mr. Mirabali, who had a brokerage license, J.F.M. Auto. He didn't have a car dealership. He had a brokerage license and an office in Indiana. He had purchased this Chevrolet through his business 11 days before the accident. And what's most important about this case is that the restriction on these policies that say that if it's available for your regular use, we're not going to cover you, the case law defines why that exclusion is a good exclusion. Because insurance companies shouldn't have to increase their risk of other cars that we don't even know people are out there driving when they're not getting a premium in money for what they're now insuring. John Mirabali did everything he possibly could to make sure that he was doing the right thing here. He went to visit his agent. The agent testified it was about four weeks before this accident, Mr. John Doherty, and his deposition is part of the record. Mr. Doherty said he'd known Mirabali for many, many years and had insured him for 20. John had never, ever been to his office. He came into his office and said, What do I need to do? I'm going to take your car down to Florida. If we like it, we're going to leave it down there for our winter vehicle. The Chevrolet, I think it was an 04 car. It was a six-year-old car. And it wasn't like he went out and got a Corvette or a SUV or a Hummer or something like that. He got a very similar car to the one that he had insured. And he went to the agency, and they've admitted that it was their agent. So country companies themselves have said that Mr. Mirabali came and said, What do I need to do to get this thing insured? And Doherty said, Don't worry about it. You've got 30 days. When you make that decision, let me know. The testimony of John. Which decision? Make the decision of whether he wanted to keep it or whether he was going to bring it back or flip it like he did as part of his brokerage business. So in answer to your question, Your Honor, about the restriction, the restriction was placed on him by country companies themselves when they said, You've got 30 days. Furthermore, Mr. Mirabali himself placed an additional restriction on himself because, as his son testified, and his deposition is part of the record as well, although we really don't refer to it in the brief, but the son said that his dad was driving down there. They were going to get their condo or whatever they had set up, and Mr. Mirabali and his wife were going to fly back for the Christmas holidays 15 days later. So while Mr. Mirabali was back, there was only going to be a 15-day period that the subject vehicle, the Chevy, was going to be down in Florida before a decision was going to be made as to whether or not it should be purchased by Mr. Mirabali as their Florida car or whether they were going to drive it back after they came back from their trip. And why the trip is so important is a lot of the cases, and even the ones that I mentioned a bit ago, where the guy goes to the golf outing and the other one where the people's gas guy stops at some friend's house, is the case law, especially in the Shone Act case. That's a 2nd District case from 1960. They say you have to focus on the specific trip where the accident occurred. And regular use, as I mentioned at the outset, is not something that is readily definable. But there are words in the case law that are descriptive of regular use. You hear frequent, habitual, primary use. And none of those three things apply here to Mr. Mirabali when he took the car to Florida. He had never done it before, so it wasn't habitual or frequent. And it wasn't going to be his primary car. His car was still sitting in the driveway of his home back in Illinois when this accident occurred. Country companies had no greater risk in this situation had he been driving the Buick versus had he been driving the Chevy. Furthermore, he wasn't trying to get something for nothing out of country companies here. He went to them and said, what do I need to do? And he was specifically told, you don't have to do anything. You've got 30 days. So the responsibility was placed both by country companies in terms of the 30 days and by himself when he was going to return in 15 days. I don't know the specific answer to that. But given the fact that they've known each other for 25 years and that they knew that that was his business and that the broker, the agent, Doherty, said that he didn't write policies on J.F.M. because you need a commercial policy for J.F.M. and he only did the personal lines. So I would submit that in their conversation he knew exactly what he was talking about. I'm going to get a car, and he knew how he got cars. And that was what he was going to do. Now, the other thing that I would love to ask Your Honor is to ask my friend Mr. McKnight is how is this any different than if Mr. Mirabali and his wife had said, you know what, let's not drive our car to Florida. Let's rent a car. Maybe we should take a Suburban. Maybe we should take something else. Even if you did take a Corvette or a Suburban, if it's a rental vehicle, you're covered under your own auto policy. If anybody's ever taken a trip and rented a car, you can decline that coverage if you have your own coverage. And it covers you if you're in the rental car. If Mr. Mirabali had borrowed his neighbor's car. I think the difference is, and maybe the trial court was focusing on this also, is the fact that he's an auto broker. I mean, if he was John Q. Public, a firefighter or whatever, maybe this would have turned out different. I don't know. But the fact that he's an auto broker, you almost think of a dealer. You think of someone like the Ryan case with a fleet of cars. You know, somebody that has a fleet that's supposed to be available to them. These cases are unique on the facts. Differding says that. Max says that. I mean, do we have the facts developed well enough in this case as to what John, Mr. Mirabali, the decedent, was doing with his business and cars and whether he used them all the time or whether they were, you know, he was grabbing them off the lot all the time. And again, he had an office in Dyer, Indiana. I don't think he had a lot for what the son testified to. So I don't even know if there was a lot. The only way I can answer that is both the son and the Daugherty, the country agent, both testified that the decedent, John Mirabali, was winding down and semi-retired, and this was almost more of a hobby that he would buy a car with his brokerage license and then flip it. But it wasn't like a fleet of cars. And even there's case law, some of the Arkansas cases, which I don't know whether you'll follow, but they were cited in the Illinois cases, which I know you will, where dealership guys said, yeah, we never even have a car. We always drive back and forth in the dealership cars, and coverage was filed. But back to this situation, even if Mr. Mirabali, his name was Salosi or Edison, and he drove one of those cars to Florida, the fact of the matter is it's two different entities. You've got JFM as one entity and you've got John Mirabali as the other entity. John Mirabali, in effect, borrowed the car from JFM. No different than if I borrow a car from a neighbor, I'm covered under my own personal policy and any coverage that's on the vehicle. If I rent a car, I'm covered under both the car rental insurance, if I sign for it, and my own personal insurance. If I'm test driving a vehicle from a dealership, I'm covered under my own personal policy, and I submit to you I think Mr. McKnight will concede those things. Mr. Mirabali here was doing almost any one of those three things. He borrowed it from JFM, and more importantly, he was test driving it because he told Doherty, I might buy this thing. What do I do if I buy it? Don't worry, you've got 30 days. And it's no different than if he had rented the car for two weeks. People rent cars for two weeks all the time and they're covered under their own policy. I keep harping back to the purpose of the exclusion, and it makes sense. The Ryan case that Your Honor cited, why should an insurance company cover a police officer who's out on a squad car and engaged in chases in dangerous neighborhoods and everything else when they're only insuring his Buick back home? That makes sense because he's in the argument that was made in Ryan was, well, I was never in this car before. And the court said, well, that doesn't make a difference. You had access to a whole fleet. And this is not a situation where the risk was greater to country companies than it was had he not been in this car, had he been in the Buick or his neighbor's car or anybody else's car. In fairness, I would also ask you to ask Mr. McKnight, what more could this guy have done to make sure that he was covered under his own policy? He had gone in there, not only did he ask, he actually bumped up his coverage on the car that he did have and was paying more premiums. They were getting more money from this guy who they had insured for 20 years. And this fatal accident happens, and now they're going to turn around and deny the claim to he and, more importantly, to his wife and her next of kin who are the people of interest in this particular case. I mean, the NAC case, the Second District case, is fully supported. The Schoenach case, as I mentioned, is supported. That's a Second District case. Auto Owners v. Miller, a Supreme Court case from 1990, that's the golf-outing case. I mean, this guy had not – there was no frequent use of this vehicle. The only testimony is that he drove it home from wherever he bought it at the brokerage sale, and he and his wife drove down to Florida and, unfortunately, both were killed. There was no habitual use. There was no regular use. Now, let me kind of deviate for a little. So the argument from country companies is that it was available for his regular use. So the question then becomes – and I disagree. I don't think it was available for his regular use. But assuming, arguendo, that you're going to agree with Neil and say, yeah, this was available for his regular use, then the question then becomes, well, what about this particular trip? Was this part of the regular use that was available for him? No. This was a unique circumstance. They were taking this car down to Florida. They had never done this before, and they had gone out of their way to tell their agent, their agent, the country company's agent, what do I got to do to get this thing insured? And he was told time and again, don't worry. You're good for 30 days. Well, I'm sure counsel will argue in words of his mouth that that was part of the limitless use of the automobile. If he was in the habit of grabbing a car off his lot whenever he felt like it, for whatever use he wanted to make of it, it's not a situation where he could only use it for work purposes. Part of his limitless use would be to take a trip to Florida or something of that nature. Well, that's analogous to some of the case law where the student at NIU was using it to go back and forth to work or school while her boyfriend was at Great Lakes, and then she makes the trip to Park Forest. Well, again, that was not part of what her regular use was. And if John, and there's no evidence of it, if John had been using vehicles that he had purchased through JFM to go to the grocery store or the movies and out to lunch or whatever, even if that were the case, again, looking at Shodack, you've got to focus at this particular trip. Was this different? Was this unique? Was this something that was not habitual or frequent? And I submit that it is. There's not a pool here. JFM didn't have a pool of cars. It was flipping a car one at a time. He is the only employee of JFM, correct? The only other... There was some testimony that his wife may have helped out or been a secretary on the corporate title. But it's basically him. He was a guy that worked at car dealerships his whole life, but retired and got this brokerage and continued to almost as a hobby to flip cars. Does it matter that here, as it appears from the facts, that John was using this vehicle, this Chevy, personally? In other words, he wasn't using this car as part of his business adventures. It had nothing to do with his company. He decides, as an individual, I might buy this car for my wife to make it clear, but I want to drive it to Florida and back. Is that a distinction that matters here? I don't think that it does because, as I mentioned, if he had gone to any other XYZ dealership and said, hey, can I test drive this vehicle for two weeks and even drive it to Florida, he's talking. Under his own policy. Under his own policy. Okay. Thank you. Where the language of the policy is unambiguous, as the case law has said, this language is unambiguous. It's putting it to use cases. I mean, is the record clear here? I mean, what I'm getting at is you filed a motion for summary judgment. There were cross motions for summary judgment. Are you saying that we should resolve this one way or the other and there's no middle ground? There's no facts left to be entered. I would agree with that. Thank you, Your Honor. You will have a chance to reply. May it please the Court. Neil McKnight on behalf of Country Preferred and Country of Usual, which I'm going to refer to as country. And counsel and I know each other, and I go by Neil as well as Cornelia. The facts aren't disputed in this case. The policy language is unambiguous, and the legal standards to be applied are fairly well established in these matters. And the underlying court ruled correctly because it looked at the operative policy language and it looked at the language that says it's not just regular use but available for regular use. And under the circumstances and based upon the interpretations of these specific policy provisions, the burden of proof rests with the claimant insured in these circumstances. So it's their burden to come forward to establish that it falls within the coverage that's provided for here. When did he buy this car? When did the company buy this car? He bought the car, and I apologize because I don't know the exact dates, but to give you the chronology of events, he went to his agent four weeks before the accident. He then subsequently purchased the car. So he did not own the car at the time that he went to the agent. And then after that, he had the accident, the tragic accident that involved his wife. And so the discussion with the agent is a purely hypothetical discussion before the car was ever actually purchased by JFM. And so when we move forward, that's really not a sort of fact that is relevant to the dispute and the application of the policy because the case law in this situation is, and I believe the lower court applied this, was ownership is determined at the time of the collision occurred, which at that time it was JFM Auto. And then the singular factor that's present in each and every case that one looks at is whether or not there's an express, whether in writing or orally, restriction on the use by the owner of the vehicle, and in this case JFM Auto, to the potential user, which is Mr. Marabali. In this case, the record is devoid of any restriction that was placed by JFM, and that's by operation of law because he is both the officer and sole employee of the company. And so Justice Jorgensen got it exactly right with the question, which was, Your Honor, that the fact that he was out and using it for personal use only bolsters our position with respect that it's available for his regular use because he can use it for any reason why, and the record is devoid of any reference to any restriction done by JFM. And I might add that this is not a situation where we have an individual or... Wait a second. Is there any evidence of what JFM's position or policy was with respect to allowing a potential driver, potential buyer to test drive a car? No, and in fact, there's no evidence that that was, that it was being offered for that purpose to him at all. There's no evidence that says JFM was going to sell it to Mr. Mirabali other than... How else was he going to buy it when he told his agent he was going to buy it? Well, but when... If I liked it. Yeah, but when he spoke to the agent, he had not yet purchased this vehicle. So that's a hypothetical question, and the record is devoid of any reference to JFM being, that the agent was told that JFM was going to buy the car and then subsequently sell it to Mr. Mirabali individually. So that's something that's not in the record, and that's something that obviously would be upon, the burden of proof would be upon the Mirabalis and the appellants to establish, and that's not in the record. All we have is that a vehicle was purchased by JFM and that there's no restrictions on its use by Mr. Mirabali, who was the principal officer and employee of the company. And under those circumstances and based upon the law that's been established for a pretty long time here, that falls within a non-owned vehicle available for the regular use. I might add that the JFM went out and bought insurance that had its own policy, and that's in the record. JFM did have a policy of insurance that did cover this vehicle, and in fact, they paid out on their policy. So the discussion was, and it's the Delos Insurance Company, and that's reflected in our brief, but with respect to this issue of whether or not there's premiums to be paid, there was premiums that were paid to Delos to cover this vehicle and which they paid out after the accident. Now the Mirabalis are asking that it also be considered an insured vehicle under another policy of insurance despite the fact that they already have insurance. And so under the circumstances and based upon the chronology of events here, the record is devoid of any reference to a restriction. If he didn't own the company, would it make a difference? If the company had given him the car and he was test driving it for however long, test driving it to Florida, would it still be a non-owned vehicle? I think it would depend on whether or not he's an employee of the company. I think if he's a stranger at arm's length, it might not be a non-owned vehicle under those circumstances, but that's not what the record is here. I think the record is that there is a, he's the owner of the vehicle by virtue of, he's not the owner individually, but JFM is the owner, and he's the officer and sole employee of JFM. Why is there a difference? I mean, because I was looking at U.S. Fidelity versus Crail, which is a case where people were, a dealership loaned a pickup truck to a family, and the family was using it for a period of time to determine whether they wanted to purchase it. That was not a non-owned vehicle. So, I mean, why is this different? He's not the owner. He's clearly not the owner of the vehicle personally, the corporation is. So why does it make a difference? Because he is in a situation where he is, because this is exactly the situation he is, unlike a prospective purchaser who will have a limitation to use the vehicle. So, for example, I'm going to let you go as a prospective buyer and drive you to Florida and then come back. But that's not an unlimited grant of the use. There is a limit that's provided there under those circumstances, meaning you don't get to use it forever. It's just for the time it takes to evaluate whether or not you want to purchase the vehicle or not. Isn't that exactly what he did, though? He did, but there was no limitation provided by JFM. So the assumption is that JFM didn't say to him, you can only use it for a period of time to evaluate whether or not you're going to buy it or not. He's going to use it for as long as you want. That's what the difference is. When you go to a dealership and you say, I want to test drive the 2006 Chevrolet, the dealership doesn't say to you, you get to use this for as long as you want, or there's no restriction on the use as long as you want. Wasn't 30 days the maximum restriction? That's a restriction with respect to the insurance policies when you buy individually on your own policy. So, for example, that's a newly acquired vehicle, which is also in the policy language. So, for example, if I were to go out and buy an automobile, I would have 30 days under my policy if I bought it individually to add it. It would automatically be added to my policy. So, for example, if Mr. Mirabali had bought the vehicle within the 30-day period individually, not in the name of JFM, it would be considered a newly acquired vehicle. But that's not what the situation is here. We have to look at the facts here. It's not a dispute, but the facts are what control. That's true. Now, if Mr. Mirabali had taken the car, talked to the dealer, talked to the broker, taken the car to Florida, and then was killed in an accident six months later in Florida, then you'd say, well, that was pretty much unlimited use of the car because he wasn't test driving. It was just a CD1. Right. But, I mean, every indication is he was just test driving it to take it to Florida, see if he wanted to keep it in Florida, and that was the limit he placed on it, at least he placed on it by himself, and he was killed on the way to Florida. Yeah. But I think under the circumstances, there is no – that's not in the record with respect to a limitation. There's no record – there's nothing in the record that says – that's what his intent was about the purchase of the vehicle down the road. That's when he said, I might buy it. He said that's a possibility. And that's a possibility that exists in many of these transactions. But as part and parcel of that, JFM never said to him as part of this, you can only use it for a month. That's – the record is completely devoid of that. And, in fact, the other possibility is that he decides not to buy it, and he leaves it in Florida, and it still remains insured under JFM, and it still becomes a JFM automobile. Those are the other possibilities. There's no definitive thing, and that's the reason why the courts have looked at this and said, we have to look at the time of the collision to determine the ownership, and that's why they focused on the restrictions that are out there. Because otherwise, you're going to get a situation where you're going to have an individual person saying, well, I should be covered under this because I plan on buying this two months from now. And that opens up a can of worms with respect to whether or not you have the ability to determine risk under a specific policy because, ultimately, every car that would possibly be driven, you'd have a person that was involved in an accident come and say, well, ultimately, my intent was maybe I might want to buy this in the future. Isn't that a case-by-case determination? I think the case-by-case determination is with respect to the non-owned vehicle aggregate. That's what's sort of what's been the standard. I don't think there's a black line or black-letter law about what constitutes. Why shouldn't we say both of these should have been denied and sent back for trial? Because it's expressly within the language of the policy because there's no restriction on use, because he had already paid for insurance from another company, and those are premiums that were not paid to country preferred and country mutual, and so we're taking a risk that he already paid for with another company. Well, there's going to be set-offs involved. I'm guessing that the coverage is disparate. Well, the problem here is that Delos also brought a declaratory judgment and then ultimately decided to pay, and as part of that process, Delos brought in country mutual in its declaratory judgment action and ultimately voluntarily dismissed country mutual with respect to those issues prior to that country mutual filing its declaratory judgment action. So to these, I understand that voluntary non-suits are not dispositive. They're not rulings of merit. However, more than a year has passed under the circumstances. Those issues are by the wayside, and I would add that that's in the record as well. Do you agree with the opposing counsel or disagree that we should focus on this unique trip? No, I don't think you should focus on the unique trip. I think the question is whether or not, as determined, it's available for his regular use. We shouldn't worry about the words casual, incidental, infrequent that I see in all these cases. Well, actually, some of the cases involve situations where people have owned the car for two days. So, for example, in the Mefcineer case with economies, and the courts have said under the circumstances when you can look at the ownership of a time of collision and there's no restrictions, the length of the use, the time of the use is not a significant factor to be considered. So you're saying it hinges on the unlimited use of the car, no restriction? I think that's what the court – that's the consistent theme of all of the decisions that we look at and all of the decisions that have been applied for either way. Counsel mentioned that the woman was using the car for college and someone was at Great Lakes. But in that case, there was – the court relied upon the specific restriction that on certain days of the week she wasn't allowed to use the car or she wasn't to use the car, which was on the weekends. And so in each and every case that's been cited, you will find some type of restriction from the owner regarding the use of the property. And in this case, there is no such restriction within the record. And for that reason, I think the underlying court should confirm. I can't find it right now, but there's a case – I think it's a Supreme Court case, if I'm not mistaken, or maybe different – that said that limitations placed on the use of the vehicle is a factor to be considered, which certainly I would not disagree with, that it is certainly a factor to be considered. But again, is it the be-all and end-all of the issue? I think if you look at the sort of length of each of these cases, I think it is the primary factor to be considered under the circumstances. And if you look at the distinctions that courts have made, whether or not it's considered available for regular use or not, the fact that it seems to be in each and every case. And as I looked at these cases in preparation for the arguments today, that's what I looked at. I looked at this concept of whether a restriction was present in any of these. And I haven't seen any case – and I'm not going to tell you that it's absolutely exact, but I haven't seen any cases where a situation arose where someone was given absolute free rein to use a vehicle without any restriction, and then a court finding that it didn't fall within this exclusion or limitation of coverage that's here. And again, I think this is a burden of proof issue. The rest, with the claimant, ensures under the circumstances. If you have any more questions, I think I – Anything else? No. Thank you very much. Reply. Mr. Walsh, do you want to begin with the burden of proof issue? Counsel will focus on that. We concede that, and I think to open a paragraph of our brief, with respect to the issue of regular use, we do have the burden of proof. And I think we have proven it. I want to address a couple of the – what I would call red herring issues that Mr. McKnight brought up. First of all, with respect to the other insurance policy, that's irrelevant. As I've said before, you can have two different insurance policies on a car. The primary coverage is always the coverage on the car itself. The driver of somebody else's car, as is the case here, can have excess coverage, as is the case here. So the fact that this matter has already been resolved with Delos Insurance Company is completely irrelevant. Other than that, he's accurate as to the procedural history of those issues. What we're here to fight over is the excess policy on the insured driver himself. And the issue keeps coming up on the unrestricted no limit. And the restrictions were placed on his use of the vehicle by he himself when he went in to visit Mr. Doherty and said, what do I need to do here? How do I make sure that I'm doing the right thing? And Doherty said, don't worry about it. You've got 30 days. There's your restriction. If we were here talking about an accident that happened on the 31st day, I'd pack my bags and go home. But we're still within those 30 days. Your Honor, Justice Jorgensen asked when was the car purchased. It was purchased by JFM Auto 11 days before the accident. So he's got 30 days from then to make that decision. The other issue that Mr. McKnight brings up is two things I want to talk about. One is Judge Wheaton talking about that she was focusing on the word available. And I would agree. She did seem to hone in on that word. But that very same word is used in most of these cases that are before your honors. But in that case specifically, it says, defines the exclusion as if it's available for your regular use. So there are cases where the word available has been discussed and found in favor of the insured. The other thing I wanted to bring up is that he talks about the, he concedes before your honors, that if Mr. Mirabali had actually retitled the vehicle into his name, whether he bought it for a dollar from JFN or paid $5,000, whatever the case may be, had he retitled it in his name, he concedes that it would be considered a newly acquired vehicle and he would have the 30 days. My point to you is that the policy language does not say a newly purchased vehicle. It says newly acquired. I could go over and borrow his pen off the table, and now I've acquired his pen. Whether or not I have to return that or what my restrictions are on that pen, that doesn't matter. It's a newly acquired pen, and I would have 30 days under the country company's policy to insure that. So I submit to you that the day that he decided to drive it to Florida was the day that he acquired that vehicle. And by their own concession, again, he has 30 days to insure it. The NAP case, again, the 2nd District case, they talk about, without an exclusion that they're trying to enforce here, it is obvious that a company might lose premiums and also that its hazards under the insurance would be increased. Again, Mr. Mirabali was trying to pay them premiums. What do I need to do to get this vehicle insured? And they said don't worry about it. They turned down the offer of the premiums. Furthermore, their risk was not increased, which is the whole purpose of this exclusion, the lack of premiums and the increase in risk. The risk is no different driving a four-door Chevy than it is the four-door Buick. And had he been driving the Buick, there's no question that he would have been insured. He did everything that he could to make sure that he and his wife's family were insured for this loss, and I submit to your honors that the coverage should apply and this matter should be reversed. Thank you. Any additional questions? Thank you very much. Thank you all very much. The decision is in due course and we are adjourned.